UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS EDWARD LAWS,

          Petitioner,

v.

ANDREW JACKSON,

          Respondent.
_____/

Civil Action No. 06-CV-14284

HON. BERNARD A. FRIEDMAN

### OPINION AND ORDER DENYING HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

This matter is presently before the court on petitioner Louis Edward Laws' habeas corpus petition under 28 U.S.C. § 2254. Respondent Andrew Jackson urges the court to deny the habeas petition. The court has concluded for reasons set forth below that the state court's adjudication of petitioner's claims was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the habeas petition will be denied.

**I. Background**

An Oakland County grand jury indicted petitioner on a charge of conspiracy to deliver or to possess with intent to deliver 650 or more grams of cocaine or heroin. *See* Mich. Comp. Laws § 750.157a, and Mich. Comp. Laws § 333.7401(2)(a)(i). The charge arose from evidence that petitioner

> engaged in a long-term conspiracy with Nathaniel Lee, Roderick Lee, and others to traffic controlled substances. Nathaniel and Roderick led and equally controlled the distribution, and Joe Abraham was the organization's primary supplier. Another Lee brother, Shedrick, also transported large quantities of drugs into the state for the organization. Nathaniel and Roderick, in turn, supplied numerous individuals, including [Petitioner] who sold the illicit drugs to third parties.

*People v. Laws*, No. 245454, 2004 WL 2877325, at *1 (Mich. App. Dec. 14, 2004) (unpublished).

Following a preliminary examination, the state district court bound Petitioner over to Oakland County Circuit Court for trial on the lesser charge of possession with intent to deliver 250 to 649 grams of cocaine or heroin. Petitioner then moved to quash the information, and the prosecutor moved to reinstate the conspiracy charge. The trial court granted petitioner's motion, denied the prosecutor's motion, and dismissed the case. The prosecutor, however, successfully appealed the trial court's decision. The Michigan Court of Appeals reversed the trial court's decision and remanded the case for reinstatement of the original charge. *See People v. Laws*, No. 223377, 2001 WL 681769 (Mich. App. Apr. 20, 2001) (unpublished). The Michigan Supreme Court denied petitioner's subsequent application for leave to appeal because it was not persuaded to review the issues. *See People v. Laws*, 465 Mich. 911; 638 N.W.2d 747 (2001) (table).

Petitioner was tried jointly with co-defendants Nathaniel Lee, Jr., and Johnnie Leroy Stanley. Petitioner and Stanley were tried before a single jury; Nathaniel Lee had a separate jury. Petitioner did not testify or present any witnesses. His defense was that he bought and sold drugs as an independent contractor and was not a member of a conspiracy.

On October 18, 2002, an Oakland County Circuit Court jury found petitioner guilty of the lesser-included offense of conspiracy to deliver or to possess with intent to deliver 225 to 649 grams of cocaine. The trial court sentenced petitioner to imprisonment for 20 to 60 years. The Michigan Court of Appeals affirmed petitioner's convictions, *see People v. Laws*, No. 245454, 2004 WL 2877325 (Mich. App. Dec. 14, 2004), and on September 28, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Laws*, 474 Mich. 869; 703 N.W.2d 812 (2005) (table).

Petitioner filed his habeas corpus petition on September 28, 2006, asserting the

following claims:

> I. Mr. Laws' conspiracy conviction is supported by insufficient evidence and must be vacated as it is violative of his state and federal constitutional rights to due process.
>
> II. The trial court reversibly erred and denied Mr. Laws his constitutional rights to confrontation in declaring Eric Lee unavailable and admitting his testimony from the preliminary examination at the trial.
>
> III. Mr. Laws was denied his 5th and 14th Amendment constitutional rights guaranteed by both state and federal laws when the trial court allowed the prosecution to present testimony from several witnesses of Defendant's bad acts.
>
> IV. The trial court denied Mr. Laws a fair trial when he instructed the jury on the lesser included offense which was not warranted by the facts presented at trial.
>
> V. The trial court erred in allowing the defendant to be prejudiced by variance in the facts presented to the jury.
>
> VI. The trial court erred when it denied defense counsel's motion to instruct the jury on the applicable statute of limitation as a defense on the specific intent to deliver 225 grams to 649 grams of cocaine at Defendant's trial.
>
> VII. The cumulative effect of the errors denied Mr. Laws a fair trial guaranteed by the United States and Michigan Constitutions.

Petitioner did not file a brief in support of these claims, but he has adopted by reference his state appellate court briefs.

**II. Legal Standards**

Petitioner is entitled to a writ of habeas corpus only if the state court's adjudication

3

of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## III. Discussion

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence adduced at trial to support his conviction because there was no evidence that he engaged in a conspiracy or was connected to the Lees' drug operation. The Michigan Court of Appeals concluded on review of this claim that the evidence reflected a long-term conspiracy to traffic in drugs and was sufficient to sustain petitioner's conviction.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

4

*In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted; emphasis in original). The *Jackson* "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

In Michigan, a criminal conspiracy is the specific intent to combine with others in order to accomplish an illegal objective. *People v. Mass,* 464 Mich. 615, 629; 628 N.W.2d 540, 549 (2001). In a drug conspiracy case, the prosecution must prove that the defendant and another person had the specific intent to combine and to deliver the statutory minimum, as charged, to a third person. *Id.*, 464 Mich. at 629-31; 628 N.W.2d at 549-50. "The existence of a conspiracy 'may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'" *United States v. Cox*, 565 F.3d 1013, 1015 (6th Cir. 2009) (*quoting United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007)). The prosecutor need not remove every reasonable hypothesis except that of guilt. *See United States v. Fortson*, 194 F.3d 730, 735 (6th Cir. 1999).

> The Michigan Court of Appeals summarized the evidence adduced at trial as follows: Roderick and Nathaniel Lee led a drug trafficking group that included [Petitioner.] Nathaniel and Roderick received several kilograms of cocaine or heroin, which they distributed to third parties, including [Petitioner, who] admitted that in 1990 and 1991, he bought multiple ounces of cocaine from Nathaniel and Roderick. At that time,

5

[Petitioner] stated that he could sell nine ounces, four to five times a day. There was also evidence from which the jury could reasonably infer that [Petitioner's] involvement in a conspiracy to deliver or possess with intent to deliver a controlled substance continued beyond 1991. Eric testified that, on one occasion between 1992 and 1994, he saw [Petitioner] give Roderick at least $10,000 for approximately five hundred grams of a powdery substance, which he believed was cocaine. In May 1993, law enforcement officers executed a traffic stop on [Petitioner's] car and found that he was carrying large amounts of unexplained money. Stanley, [Petitioner's] uncle, was also in the car. There was evidence that Stanley bought cocaine from Roderick and distributed it to third parties, and was at Roderick's house throughout the 1990s.

In October 1993, police discovered that [Petitioner] was selling drugs when an officer had contact with one of [Petitioner's] customers. Eric testified that, in 1994 or 1995, he saw [Petitioner] give Roderick between $5,000 and $10,000. Eric believed that Roderick gave [Petitioner] about fourteen grams of heroin, although he did not see the exchange. Eric testified that, later that day, [Petitioner] told him that heroin sold for $40 a pack in Chicago and invited Eric to Chicago. In 1995, [Petitioner] started working with law enforcement and named Roderick as one of his drug suppliers. [Petitioner] then successfully engaged in two controlled buys from Roderick in January and February 1995. From this evidence, a jury could reasonably infer that, as of 1995, [Petitioner] and Roderick still had an agreement regarding the sale and distribution of a controlled substance. In 1996, after [Petitioner] was no longer working for law enforcement, he was discovered in a heavy drug trafficking area in Pontiac, carrying more than $6,000.

Additionally, [Petitioner's] friend, Helen Alexander, testified that she purchased cocaine from [Petitioner] intermittently "every day for about 10-15 years," and sometimes two to six times a day, some of which she sold to third parties. [Petitioner] also sold cocaine to Alexander's cousin. According to Alexander, [Petitioner] was aware that she was selling the cocaine that she received from him to third parties. She delivered 3.5-gram quantities of cocaine for [Petitioner] about fifty times. Alexander was also with [Petitioner] when he sold cocaine in amounts of 28 and 125 grams to third parties. Finally, there was evidence that from 1987 through 1998, [Petitioner], like other coconspirators, was not employed and did not file any tax returns.

*Laws*, 2004 WL 2877325, at *1-2.

A rational trier of fact could have concluded from the evidence, as summarized above, that petitioner had an agreement with Roderick Lee and others to distribute 225 to 649 grams of cocaine or heroin to third parties. Although there was no evidence of a formal agreement to deliver controlled substances, Eric Lee opined that petitioner's purchase of half a kilo (500 grams) of cocaine from Roderick Lee was for the purpose of re-selling the drugs, not for personal use. The jury could have inferred from this testimony that there was an agreement between petitioner and Roderick Lee to deliver the statutory amount.

The evidence, taken in the light most favorable to the prosecution, was sufficient to sustain petitioner's conviction. Therefore, the state court's ruling was not contrary to, or an unreasonable application of, *Jackson*.

**B. Confrontation**

Eric Lee's testimony at petitioner's preliminary examination was read into the record at petitioner's trial because Eric invoked his right to remain silent at petitioner's trial and not to incriminate himself. Petitioner contends that the reading of Eric's former testimony into the record at trial deprived him of his constitutional right to confront the witnesses against him.

The facts underlying this claim were explained by the Michigan Court of Appeals as follows:

> Eric, who was involved in the drug trafficking conspiracy, testified before a grand jury in April 1998, and gave critical evidence against [Petitioner] and the Lee family organization. He also testified at [Petitioner's] December 1998, preliminary examination. When he testified at Nathaniel [Lee's] preliminary examination in May 2000, however, he claimed he could not recall any details about the alleged

7

> drug trafficking conspiracy or his former testimony. Eric even denied any memory of ordinary facts, such as his previous address. Based on this claimed lack of memory, the prosecution declined to extend its grant of immunity to cover [Petitioner's] 2002 trial. Eric invoked his Fifth Amendment privilege not to testify at trial, and the court accepted it. As a result, the court concluded that Eric was "unavailable" under MRE 804(a). In response to defense counsel's objections, the court also concluded that defense counsel had an opportunity to cross-examine the witness, noting that he asked several questions and was present throughout the hearing. The court admitted Eric's preliminary examination testimony.

*Laws*, 2004 WL 2877325, at *3. The Michigan Court of Appeals determined that the trial court did not abuse its discretion when it allowed Eric's former testimony to be read to the jury.

The Confrontation Clause of the Sixth Amendment "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.'" *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006), *quoting* U.S. Const. Amend VI. "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Testimonial evidence" includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Id.*

Eric Lee's testimony at the preliminary examination obviously was "testimonial evidence," as defined by *Crawford*. The question is whether Eric Lee was "unavailable" at petitioner's trial due to the invocation of his right to remain silent. Petitioner contends that the prosecutor improperly refused to extend a grant of immunity to Eric and that this refusal to extend immunity caused Eric to be unwilling to testify. Petitioner maintains that the error was not harmless because the jurors might have found Eric's testimony to be incredible if they could have observed him testify in person.

"[P]rosecutorial and judicial actions aimed at discouraging defense witnesses from testifying deprive the criminal defendant of his right to due process." *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (citing *Webb v. Texas*, 409 U.S. 95 (1972). The test for determining whether prosecutorial or judicial remarks intimidated a witness and deprived the defendant of due process is whether the remarks "could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb*, 409 U.S. at 98. Further,

> Where the prosecutor simply provides the witness with a truthful warning, no constitutional violation occurs. Where, however, the substance of what the prosecutor communicates to the witness is "a threat over and above what the record indicate[s] was timely, necessary, and appropriate," the inference that the prosecutor sought to coerce a witness into silence is strong.

*United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991) (citations omitted).

Eric Lee gave incriminating testimony during the grand jury proceeding and at petitioner's preliminary examination, but he claimed to have a loss of memory at Nathaniel Lee's subsequent preliminary examination. The prosecutor therefore had a substantial basis for believing that Eric would testify untruthfully at petitioner's trial or would claim to have no memory of the incidents giving rise to the charge against petitioner. It was not improper to revoke the grant of immunity from prosecution on that basis. "[P]rosecutors have significant discretion to decline immunity to a witness," and a prosecutor's "refusal to absolve witnesses of their responsibility to testify truthfully does not impermissibly distort the fact-finding process." *United States v. Burke*, 425 F.3d 400, 411-12 (7th Cir. 2005).

The court therefore concludes that the trial court correctly deemed Eric Lee to be "unavailable" due to his voluntary decision not to testify. And because defense counsel had an

9

opportunity to cross examine Eric at petitioner's preliminary examination, the decision of the Michigan Court of Appeals was not contrary to, or an unreasonable application of, *Crawford*.

### C. "Other Acts" Evidence

Petitioner alleges that his right to due process was violated by testimony regarding his "run-ins" with the law. Specifically, petitioner claims that evidence of his prior conviction for carrying a concealed weapon eliminated his right to be presumed innocent and allowed the jury to infer that he had a bad character and committed the offense in question. The Michigan Court of Appeals determined that the trial court did not abuse its discretion by admitting the disputed evidence.

> This court finds no merit in petitioner's claim because
>
> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). *See also Bey v. Bagley*, 500 F.3d 514, 519-23 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1704 (2008). As there is no Supreme Court decision barring the use of propensity evidence on constitutional grounds, the state court's decision that the evidence was admissible is not contrary to Supreme Court precedent.

Furthermore, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the

Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). Evidence that petitioner had a prior conviction for carrying a concealed weapon did not render the trial fundamentally unfair because the jury was made aware of the unusual circumstances giving rise to the conviction. Police Officer Robert Miller testified that, while petitioner was working as an informant for the police, he arrived armed with a weapon at a meeting with the police. Petitioner explained to Officer Miller that someone was attempting to kill him and that he preferred to have the police catch him with a gun than to have his enemies catch him without a gun. Officer Miller admitted at trial that he had made no provision for protecting petitioner. (Tr. Oct. 1, 2002, at 268-69.) Under the circumstances, and given the fact that the prosecutor did not argue that petitioner must be guilty of the charged offense because he had a prior conviction, the admission of "other acts" evidence was not fundamentally unfair and did not deprive petitioner of due process.

### D. Instructing on a Lesser-Included Offense

Petitioner contends that the trial court deprived him of a fair trial by instructing the jury on the lesser-included offense of conspiracy to deliver or to possess with intent to deliver 225 to 649 grams of a controlled substance.[1] Petitioner claims that the instruction was not warranted by the facts presented at trial and that he was either not guilty or guilty of a conspiracy involving 650 or more grams of a controlled substance.

The Michigan Court of Appeals determined that petitioner waived appellate review of this claim when defense counsel acquiesced in the trial court's decision to give the instruction on a lesser offense and expressed satisfaction with the trial court's jury instructions. The trial transcript

---

[1] The trial court also instructed the jury on (1) conspiracy to deliver or to possess with intent to deliver 50 to 225 grams of cocaine or heroin and (2) conspiracy to deliver or to possess with intent to deliver less than 50 grams of cocaine or heroin.

11

indicates that defense counsel opposed having a jury instruction on lesser-included offenses, but he acknowledged the prosecutor's right under state law to have the trial court instruct on lesser-included offenses. The court finds it unnecessary to decide whether petitioner's claim is procedurally defaulted because the claim lacks merit for the reason given below.

On habeas review the question is not whether the instructions were "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the disputed jury instruction must have violated "some right which was guaranteed to the defendant by the Fourteenth Amendment" or the instruction must have "so infected the entire trial that the resulting conviction violates due process." *Id.* at 146-47.

In Michigan, "[c]onspiracy to possess with intent to deliver 50 to 224 grams of cocaine is a lesser included offense of conspiracy to possess with intent to deliver over 650 grams." *People v. Wilson*, 454 Mich. 421, 428; 563 N.W.2d 44, 47-48 (1997) (citing *People v. Marji,* 180 Mich. App. 525, 531; 447 N.W.2d 835 (1989)). It follows that conspiracy to possess with intent to deliver 225 to 649 grams of a controlled substance is a lesser included offense of conspiracy to possess with intent to deliver over 650 grams.

Furthermore, Eric Lee's testimony established that, on one occasion, petitioner purchased half a kilo (500 grams) of cocaine from Roderick Lee. Eric opined that the cocaine in question was intended for sale, not personal use. (Tr. Sept. 26, 2002, at 74-77.) This testimony was sufficient to support the jury instruction on conspiracy to deliver or to possess with intent to deliver 225 to 649 grams of cocaine or heroin. The jury instruction on the lesser-included offense did not violate petitioner's right to due process.

### E. Variance

In a related claim, petitioner alleges that the jury instructions on lesser-included charges amounted to an improper variance in the indictment because the indictment charged him with a different amount of drugs. The Michigan Court of Appeals stated that this claim had no merit because, under state law, a criminal defendant is put on notice that the prosecutor might charge him with a lesser offense when he or she is charged him with the greater offense.

This court agrees that there was no constructive amendment to the indictment. Petitioner was merely convicted of a lesser-included offense and the elements of the offense for which he was convicted were included in the charged offense. Thus, his claim lacks merit. *See United States v. Martinez*, 430 F.3d 317, 339-40 (6th Cir. 2005).

### F. Statute of Limitations

Petitioner alleges that the trial court deprived him of a meaningful opportunity to present a defense when the court denied his motion to instruct the jury on the applicable statute of limitation as a defense. The trial court did instruct the jurors that, in order to find petitioner guilty, they had to find that the conspiracy occurred between January 1985 and September 14, 1998. (Tr. Oct. 17, 2002, at 90.) To the extent that the trial court failed to instruct the jury more specifically on the statute of limitations as a defense, petitioner's claim lacks merit for the following reason.

A criminal defendant is entitled to a jury instruction on "any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Here, the applicable statute of limitations was six years. *See* Mich. Comp. Laws § 767.24(5). Because the indictment was filed on September 10, 1998, the offense had

to occur after September 10, 1992.

Eric Lee's testimony established that petitioner bought a half kilo of cocaine from Roderick Lee sometime in the early 1990s or from 1990 to 1994. Eric also testified that in 1994 petitioner acquired heroin from Roderick Lee, and that in 1994 and 1995 petitioner asked him if he wanted to go to Chicago where petitioner and Jermaine Coleman were selling heroin. Helen Alexander testified that she bought drugs from petitioner and either used or sold the drugs until 1998. During her dealings with petitioner, she once saw him sell 28 grams of cocaine and another time she saw him sell 125 grams.

This evidence was sufficient to establish that petitioner was involved in a conspiracy to deliver 250 to 649 grams of cocaine or heroin after September 10, 1992. Therefore, the lack of a specific jury instruction on the statute of limitations as a defense did not deprive petitioner of an opportunity to set forth a meaningful defense, and the state appellate court's decision was not contrary to, or an unreasonable application of, *Mathews*.

### G. Cumulative Effect of Errors

Petitioner alleges that the cumulative effect of the errors at trial deprived him of his constitutional right to a fair trial. The Michigan Court of Appeals rejected this claim on the ground that no cognizable errors existed. This court finds no merit in the claim, because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's decision was contrary to Supreme Court precedent. Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

**IV. Conclusion**

The state appellate court's adjudication of petitioner's claims on the merits did not result in an unreasonable determination of the facts or in a decision that was contrary to, or unreasonable application of, clearly established federal law, as determined by the Supreme Court. Accordingly, the habeas corpus petition is denied.

Reasonable jurists could disagree with the court's resolution of petitioner's first and second claims regarding the sufficiency of the evidence and petitioner's right of confrontation. Therefore, a certificate of appealability may issue on Claims I and II.  The court declines to issue a certificate of appealability on petitioner's other claims (III - VII), because reasonable jurists would not disagree with the court's resolution of those claims, and the claims do not warrant encouragement to proceed further.  *See Banks v. Dretke*, 540 U.S. 668, 674 (2004).  Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).


S/Bernard A. Friedman
Bernard A. Friedman
United States District Judge

Dated:  July 8, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 8, 2009, by electronic and/or ordinary mail.

        S/Carol Mullins

        Case Manager